**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: MARRIOTT INTERNATIONAL, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 2879 |

**INTERESTED PARTY PLAINTIFF DONNA HITESHEW'S RESPONSE IN SUPPORT OF CONSOLIDATION AND TRANSFER**

Donna Hiteshew, the plaintiff in *Hiteshew v. Marriott International, Inc. et al.*, No. 8:18-cv-03755, agrees that the Related Actions[1] should be centralized in a single court for coordinated or consolidated pretrial proceedings, and respectfully requests transfer of these actions to the District of Maryland.

Pursuant to Rule 6.2(e) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation ("J.P.M.L."), Plaintiff hereby submits this response to the Motions to Transfer Actions to the United States District Court for the District of Maryland and for Consolidation Pursuant to 28 U.S.C. § 1407, filed by Dallas Perkins (plaintiff in *Perkins v. Marriott International, Inc.*, No. 1:18-cv-12477 (D. Mass.)), and by Peter Tapling and David Sparks (plaintiffs in *Tapling v. Marriott International, Inc.*, No. 8:16-cv-03703 (D. Md.)) (collectively, the "Movants"). As explained herein, Plaintiff agrees with Movants that due to common questions of fact and law present in the Related Actions, centralization is appropriate and prudent under 28 U.S.C. § 1407, and moreover, that the District of Maryland is the most

---

[1] The "Related Actions" are the 58 class action cases currently filed against Marriott in response to the data breach it announced on November 30, 2018, as well as any tag-along cases subsequently filed that allege similar facts and claims. (*See* Schedule of Actions, attached as Exhibit A.)

1

logical choice of forum. Plaintiff further believes that any judge in the District of Maryland, Greenbelt Division can effectively preside over the MDL.[2]

Should the Panel determine that the District of Maryland is not the optimal forum for this litigation, however, Plaintiff Hiteshew proposes that the United States District Court for the Northern District of Illinois—where courts not only have significant MDL experience but also extensive experience in consumer class actions, and data breach class actions in particular—is the best alternative jurisdiction.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

On November 30, 2018 Defendants Marriot International Inc., and Starwood Hotels & Resorts Worldwide LLC (collectively, "Marriott" or "Defendants") announced that it had suffered the second largest data breach in history. All told, the hotel giant revealed that the confidential personal information of over 500 million people—including sensitive data such as names, addresses, contact information, passport numbers, birthdates, employer information, and credit card data—had been exposed to hackers. In the weeks that followed, consumers filed class action lawsuits across the country, alleging that Marriott had failed to adequately safeguard this data (and in Plaintiff's Hiteshew's case, that Marriott's vulnerabilities, at the time of filing, remained ongoing), in violation of numerous statutory and common law duties. To date, 58 lawsuits have been filed across 13 districts. (Ex. A.)

On December 3, 2018 plaintiff Dallas Perkins filed a motion to consolidate the Related Actions and transfer them to the District of Maryland. (Dkt. 1.) Plaintiffs Peter Tapling and

---

[2] Plaintiff Hiteshew also agrees with plaintiffs Todd J. Elliott's, Matthew Crabtree's and Betty Robinson-Harris' responses supporting consolidation and transfer (Dkts. 8, 78 respectively), that Plaintiff's assigned judge—the Honorable Paul W. Grimm—is well-equipped to handle this MDL. Among other things, Judge Grimm's expertise in electronic discovery would certainly help guide this complex data breach action to a timely resolution.

David Sparks did the same on December 4, 2018. (Dkt. 4.) Plaintiffs in numerous of the other actions have since filed response in support. (*See* Dkts. 8, 72, 78, 82, 84, 86, 88, 89, 90, 93, 95, 96, 97, 98.) Defendants have also filed a response in support of consolidation and transfer of the actions to the District of Maryland. (Dkt. 79.) Plaintiff Hiteshew files the instant response in support of the same, but proposes that, should the Panel decide not to transfer these cases to District of Maryland, Greenbelt Division, the Northern District of Illinois is the next best venue.

## ARGUMENT

**I.   The Related Actions Should be Centralized to Promote Judicial Economy and Avoid Inconsistent Rulings.**

Under 28 U.S.C. § 1407, the Panel may transfer and coordinate or consolidate actions if it determines that: (1) "one or more common questions of fact are pending in different districts"; (2) transfer would serve "the convenience of the parties and witnesses"; and (3) transfer "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

**A.   This Data Breach Litigation is Particularly Well-Suited for Consolidation.**

The consolidation and transfer sought here easily satisfies the requirements for transfer and consolidation, as the Related Actions involve substantially similar factual and legal issues relating to Marriott's massive security breach and are likely to involve essentially the same pretrial issues and discovery.

*First*, consolidation is appropriate where the constituent actions are centered on the same core allegations. Data breach litigation—which invariably arises from a single company's failed cybersecurity and the (often) millions of consumers who consequently had their personal information exposed—is therefore particularly amenable to consolidation. *See, e.g.*, *In re Ashley Madison Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d 1378, 1379 (J.P.M.L. 2015) (actions alleging data breach involving 37 million customers "involve common questions of fact"); *In re:*

*Supervalu, Inc., Customer Data Sec. Breach Litig.*, 67 F. Supp. 3d 1377 (J.P.M.L. 2014) (consolidation of actions appropriate because a data breach—which compromised the personal information of customers across the country—"involve[s] common questions of fact"); *In re: Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013) (same). The Related Actions in this particular data breach are no different: each Complaint is based on allegations that Marriott enabled a massive security breach, exposing the personal data of over 500 million guests.

*Next*, consolidation is appropriate here because it will eliminate duplicative discovery and inconsistent pretrial rulings. That is, because the Related Actions turn on the same set of core facts—*i.e.*, Marriott's security systems and the resultant breach—each will be confronted with the same discovery and pretrial issues about Marriott's data security policies. Accordingly, consolidation will "ensure that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *In re Resource Exploration Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980). This principle has favored consolidation of data breach litigation time and again. *See, e.g.*, *In re Ashley Madison Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d at 1379-80 (ordering that thirteen data breach cases be consolidated and explaining that "[c]entralization [] will eliminate duplicative discovery, prevent inconsistent pretrial rulings, particularly with respect to class certification, and conserve the resources of the parties, their counsel, and the judiciary"); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1353 (J.P.M.L. 2018) (ordering consolidation of data breach cases on the same grounds);

*In re Med. Informatics Eng'g, Inc., Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d 1381, 1382 (J.P.M.L. 2015) (same). As such, consolidation is appropriate here.

> **B.    The District of Maryland is the Optimal Jurisdiction for the Related Actions to Proceed.**

Assuming the Panel agrees that this matter is well-suited for consolidation, the United States District Court for the District of Maryland, Greenbelt Division is the appropriate transfer forum. To start, Marriott's headquarters, offices, and primary operations are located in Bethesda, Maryland. Accordingly, the nexus of alleged wrongful conduct giving rise to the Related Actions, and the location where witnesses and documents relevant to the litigation will be found, is likely to be in the District of Maryland. This Panel has repeatedly recognized that a defendant's location is a significant factor in determining a transferee district. *See, e.g., In re Liquid Aluminum Sulfate Antitrust Litig.*, No. MDL 2687, 2016 WL 440249, at *1 (J.P.M.L. Feb. 4, 2016) (designating the District of New Jersey, which has "the closest nexus to this litigation," because, *inter alia*, "[s]everal defendants are located in or near this district, including defendants named in most actions, and therefore, relevant documents and witnesses are likely to be found there"); *In re: GNC Corp. Triflex Prod. Mktg. & Sales Practices Litig. (No. II)*, 988 F. Supp. 2d 1369, 1370 (J.P.M.L. 2013) (selecting the District of Maryland as the transferee district because it is a "geographically central forum" that is "close to [defendant's] headquarters . . . where common evidence is likely to be located"); *In re: Mun. Mortgage & Equity, LLC, Sec. & Derivative Litig.*, 571 F. Supp. 2d 1373 (J.P.M.L. 2008) (designating the District of Maryland as the transferee court because, *inter alia*, defendant is "headquartered in Baltimore, Maryland, and parties, witnesses and documents may be found there"). Here, all Related Actions allege that unlawful practices and decisions made by Marriott led to their massive data breach. Therefore,

5

Marriott's headquarters, operations, and facilities in Bethesda will be an obvious focal point of these actions.

Moreover, at present, the majority of the Related Actions (at least 33 of the 58) are already venued in the District of Maryland—including the *Bell*[3] and *Walker*[4] actions—which were the first filed. This circumstance also weighs in favor of transferring the Related Actions to the District of Maryland. *See, e.g., In re: Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*, No. MDL 2639, 2015 WL 4879656, at *2 (J.P.M.L. Aug. 14, 2015) (selecting the Central District of California as the transferee court because, *inter alia*, it "has the largest number of related actions of any district, and several plaintiffs and defendants support centralization in this district, both in the first instance and in the alternative"); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 148 F. Supp. 3d 1367, 1369 (J.P.M.L. 2015) (selecting the Northern District of California as the transferee court because, *inter alia*, a plurality of actions were pending there, "including the first-filed case in the nation"); *In re Elevator & Escalator Antitrust Litig.*, 350 F.Supp.2d 1351, 1353 (J.P.M.L. 2004) (selecting the Southern District of New York as the transferee court because, *inter alia*, the first filed and largest number of actions were pending in the district); *In re Bair Hugger Forced Air Warming Devices Products Liab. Litig.*, No. MDL 2666, 2015 WL 8541734, at *2 (J.P.M.L. Dec. 11, 2015) (selecting the District of Minnesota as transferee court because, *inter alia*, nine of the fourteen constituent actions were pending in the district); *In re: Potash Antitrust Litig. (NO. II)*, 588 F. Supp. 2d 1364, 1365 (J.P.M.L 2008) (selecting the Northern District of Illinois as the transferee court because, *inter alia*, it is where "the majority of the known actions in [the] docket are already pending").

---

[3]    *Bell, et al. v. Marriott International, Inc.*, No. 8:18-cv-03684 (D. Md.).
[4]    *Walker v. Marriott International Inc., et al.*, No. 8:18-cv-03702 (D. Md.).

Additionally, courts in the District of Maryland are relatively unburdened by their caseload: there are presently only two active MDLs in the District of Maryland,[5] and of the 131 district court vacancies nationwide, only one is in the District of Maryland.[6] That the District of Maryland will be able to more easily shoulder an MDL of this size further favors transfer under § 1407. *See, e.g., In re Teflon Products Liability Litigation*, 416 F.Supp.2d 1364, 1365 (J.P.M.L. 2006) (transferring to district that has "general docket conditions . . . with the present resources to devote to pretrial matters").

Finally, three major airports—Dulles International Airport, Baltimore-Washington International Airport, and Reagan National Airport—service the D.C. Metropolitan Area. Considering that various counsel, experts, witnesses, and other relevant parties will be dispersed across the country, the ease of travel to the District of Maryland makes it further well-suited for transfer. *See, e.g.*, *In re Domestic Airline Travel Antitrust Litig.*, 140 F. Supp. 3d 1344, 1345–46 (J.P.M.L. 2015) (transferring to the District of Columbia because it "presents a convenient and accessible forum for what will be a nationwide litigation").

### C. Alternatively, the Northern District of Illinois is Likewise an Optimal Jurisdiction for this Litigation to Proceed.

In the event the Panel declines to transfer the Related Actions to the District of Maryland, Plaintiff believes that the Northern District of Illinois, where courts have particularly strong experience presiding over data breach class actions (and consumer class actions, generally) would be the jurisdiction best-suited for transfer. Indeed, in the past decade, courts in the Northern District of Illinois have issued several decisions that helped define the contours of

---

[5] *See* MDL Statistics Report –Distribution of Pending MDL Dockets by District as of December 17, 2018, *accessible at*: https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-December-17-2018. pdf (last accessed Dec. 23, 2018).

[6] *See* Current Judicial Vacancies as of December 22, 2018, *accessible at:* http://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies

7

relevant data breach issues. *See, e.g., In re Barnes & Noble Pin Pad Litig.,* No. 12-CV-8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013); *In re Michaels Stores Pin Pad Litig.,* 830 F. Supp. 2d 518 (N.D. Ill. 2011); *Remijas v. Neiman Marcus Grp., LLC*, No. 14 C 1735, 2014 WL 4627893 (N.D. Ill. Sept. 16, 2014), *rev'd and remanded,* 794 F.3d 688 (7th Cir. 2015). And even more recently, Northern District of Illinois courts have grappled with legal issues that pervade the Related Actions: whether consumers can state claims for negligence and breach of various contractual duties when companies fail to safeguard personal information as promised. *See e.g.*, *Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2016 WL 754731 (N.D. Ill. Feb. 23, 2016); *In re VTech Data Breach Litig.*, No. 15 CV 10889, 2018 WL 1863953 (N.D. Ill. Apr. 18, 2018). This Panel has at times favored transfer to districts where courts have unique familiarity with the issues at hand. *See, e.g.*, *Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. and Sales Practices Litig.*, 847 F. Supp. 2d 1381, 1382 (J.P.M.L. 2012) (selecting district experienced with pending MDL with "issues that appear similar to those in this docket"); *In re: Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prod. Liab. Litig.*, 996 F. Supp. 2d 1380, 1383 (J.P.M.L. 2014) (transferring to district and judge with a pending case "similar to this docket."); *In re: GNC Corp. Triflex Prod. Mktg. & Sales Practices Litig. (No. II)*, 988 F. Supp. 2d 1369, 1370 (J.P.M.L 2013) (same).

Moreover, because counsel for all parties involved in the Related Actions are dispersed across the United States—*i.e.* from Illinois, California, New York, and Texas, to name a few—Chicago presents a geographically central forum, serviced by two international airports, for parties to convene with ease. *See, e.g., In re Ocwen Fed. Bank FSB Mortg. Servicing Litig.*, 314 F. Supp. 2d 1376, 1379 (J.P.M.L. 2004) (transferring to the Northern District of Illinois because it is "geographically centrally located"); *In re McDonald's French Fries Litig.*, 444 F. Supp. 2d

8

1342, 1343 (J.P.M.L. 2006), *adhered to*, 545 F. Supp. 2d 1356 (J.P.M.L. 2008) ("Given the geographic dispersal of the constituent actions, the Northern District of Illinois offers a relatively geographically central and accessible forum for this litigation.") Thus, should the Panel determine that the District of Maryland is not the appropriate venue, the Northern District of Illinois is well-suited for the job.

### CONCLUSION

For the foregoing reasons, Plaintiff Hiteshaw respectfully requests that the Panel issue an Order transferring the Related Actions to the United States District Court for the District of Maryland, or in the alternative, to the United States District Court for the Northern District of Illinois, for coordinated or consolidated pretrial proceedings.

December 27, 2018                               Respectfully submitted,

**DONNA HITESHEW**, individually and on behalf
of all others similarly situated,

/s/ Eve-Lynn J. Rapp
    Counsel for Plaintiff Donna Hiteshew

Rafey S. Balabanian
rbalabanian@edelson.com
Eve-Lynn Rapp
Edelson PC
123 Townsend Street
Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Jeffrey M. Mervis
jmervis@mervislaw.com
THE MERVIS LAW FIRM, LLC
12505 Park Potomac Avenue, 6th Floor
Potomac, Maryland 20854
Tel: 301.762.0020

## CERTIFICATE OF SERVICE

I, Eve-Lynn J. Rapp, an attorney, certify that on December 27, 2018, I will cause to be served the above and foregoing ***Interested Party Plaintiff Donna Hiteshew's Response in Support of Consolidation and Transfer***, by causing true and accurate copies of such paper to be delivered via the Court CM/ECF system on December 27, 2018.

                                                    /s/ Eve-Lynn J. Rapp